Good morning and may it please the court. My name is Dan Donovan. I'm from Great Falls, Montana. I represent the defendant appellant George Manlove of Missoula. First, the website said 15 minutes, which I don't think I really needed. The in-court document says 10 minutes, so if I may, I'd like to reserve one out of the 10 minutes for rebuttal. Well, you're welcome to manage your time as you see fit. You are the first person I've ever heard complain about too much time on our calendar, so that's a first. Go right ahead. All right. Thank you very much. I've tried a lot of cases, made a lot of objections, and when you object at trial, at trial counsel, particularly defense counsel in a criminal case, it's really a gut reaction. You jump up. This isn't fair. And you try and maybe in a split second to think of what rule of evidence or number do I need to cite, which is required by the rules. Later on, if I appeal my case, I read the transcript, and I look at it, I go, man, that wasn't such a good objection. I was wrong even though I reacted with my gut. Or if I was right, generally speaking, it was one question, one leading question, one whatever, just one.  In this case, in reading the transcript, and there's 14 volumes, the leading questions here just jumped right out at me. They started, and there wasn't just one. There wasn't just five. There wasn't just 10, 25. There was hundreds of them. And what we're supposed to have, as you know, is a direct testimony with non-leading questions, cross-examination, cross-examination redirect with non-leading questions. But here we had cross-examination, cross-examination, cross-examination. What you had was leading, leading, leading. Leading, leading, leading. So could I ask a couple questions about that? The judge thought that this witness, after, I think there were two objections, right? And then early on, on the basis of leading, the judge said, well, this is a hostile witness, right? He did say that, but the witness, really, I didn't think they established in the record he was hostile. That's my first question. Why was the witness not hostile? Well, he was already cooperating, and I think. Have we ever said that a cooperating witness is not a hostile witness? Well, I don't have that situation. But in this particular case, not only was he cooperating, he gave a statement. I've come to find out the same statement. I don't know if you can say he gave a statement, but the prosecutor took a statement from him and asked basically the same leading questions in his statement prior to the time he was sentenced. Right. And he can do all that if he's hostile, right? So my question really about, I think it's threshold for me whether he's a hostile witness. And there's still concerns about leading because, as you said, there's several hundred leading questions. But was he deemed hostile because he had criminal charges pending? Is that it? I mean, is that the sum of it? I'm not sure. He certainly didn't seem to balk at any of answering any of the questions. That's why I'm pressing you on that point. I think they really jumped from the term adverse witness to hostile witness. And certainly he was potentially adverse as a co-defendant. But I didn't see any signs of hostility in the record. Well, let me ask you a couple of questions because, counsel, you and I tried a lot of cases, and I want to see if I've got this down. It's my understanding that the state disclosed to you that they would be calling him as an adverse witness at trial. Is that true? They put in their pretrial motion they may call him, yes. And they said that he would be called as an adverse witness for the sake of streamlining its case in chief and in hopes of shortening the trial. That's what they said, isn't it? That's correct, Your Honor. And so it's my understanding, then, you were on notice of what was going to happen here. The trial counsel was. I wasn't tracking. Well, I understand that the trial counsel was on notice. You're right. I wish you'd have been the trial counsel because it seems to me that once being on notice about that, if one were really going to say this is not an adverse witness or a hostile witness, one would have objected when they got this notice. No objection was ever filed, right? That's correct. Then, as I understand it, they started into the examination, and there was one objection. Now maybe two objections that they were leading. As you and I both know as trial counsel, it's okay to lead even any witness as long as it's foundational, as long as it doesn't go to the stuff. So I looked at the two times when they objected for leading, and neither of those did I think really whether hostile or not made any difference. In fact, it seemed like they were only foundational questions, and you would have overruled the objection in any event. And yet, in each one of these instances, now you're saying there were many, but there were leading questions which got to the real answers, and nobody said they could not lead. Yet nobody objected on those questions. After the court ruled that it was hostile. Well, the court ruled on two objections. Right. But the court did not rule on any other objections because there were none, right? He made an objection on other ground but not on leading. Yes, Your Honor. Can I just make sure that we're square here? There were two objections. The court ruled that this witness was going to be deemed hostile, correct? Correct. Not adverse, but hostile. And so at most, it seems we might be. Is that right? Well, I'm not sure. I think it was adverse. I don't know about hostile. Did he say adverse? Because I think they put adverse in their pretrial brief. Okay, go right ahead. I'm going to check and see. Okay. So here, the only reason I'm saying this is so I've got all these questions. There are the questions where there was an objection, and I would have said overruled as the judge because I don't think there was anything about adverse, hostile, or anything that had to do with those. We would have got it in anyway. And no other questions, no other objections. So is this a waiver? That's what the government argues. Well, I'm trying to get your best idea. Okay. I don't think it is under Rule 103B, which basically says there's no need to renew an objection. Well, just a minute. No need to renew objections if, in fact, one hadn't been on notice before the trial came that they were going to use this as an adverse witness and they were going to use leading questions, and nobody objected. He was on notice. That's correct, Your Honor, that they used the word may, not that they haven't. But they did, and Judge Smith's right. It's adverse. Okay. It's on ER2. That's exactly right. And they were on notice, right? Yes. And so this really just comes to the nub of it. So then there's almost 500 leading questions. Right. So at what point, and there's no objections, right, just after those first two. So what is it you're asking us to do? Deem this forfeited? Rule that he didn't have to keep objecting. Well, why would that, on the basis of what exactly? Basic of FRA 103B. Well, but FRA 103B is great, but it seems to me if, in fact, I've got a notice that somebody's going to lead and I've made an objection, I have never seen the case where I didn't make an objection at the very point where I thought the leading question might be something I did not want to get in, and it didn't happen here. Right. So at that point, I'm saying to myself, is this waiver? Is this forfeiture? Or what is it? I mean, if it's forfeiture, then it's got to be plain error, and I'm not sure it's plain error. So I can't get you in on forfeiture. I can't get you in, and you don't want me to go to waiver, or you're out nonetheless. So where do I go to help you? Would it be plain error if there's almost 500 leading questions? 494, I counted. I really think it would be plain error. Without an objection? Well, with a semi-objection. I mean, I think this error is so strong enough, it infected the whole trial, that it would be plain error. So can I get right there? Let's say that we agree that it's forfeiture for a minute, hypothetically, and it's plain error standard. This witness came very late in this lengthy trial, and the government has argued that he was actually cumulative. Can you, because so many other witnesses, many, many witnesses were called. Can you point to any question that this witness answered that was harmful to your client that wasn't already asked and answered by one of the earlier witnesses, counsel? The central ones are questions about conspiracy, because these two were the only two conspirators. So which are the harmful questions, if we get through the hurdles that Judge Smith has laid out, regarding plain error? The question basically said, isn't it true that you committed conspiracy with George Mantle of my client? Yes. Okay, and so where are those questions? Counsel, where are those questions? I'm asking you, because there's 500 of them. Can you tell me? Well, I highlighted some in the brief, in my brief. Did they all go to the conspiracy? No, they didn't all go to the conspiracy. So here's to be really clear, because you're over your time. You're over your time. When you come back up, we'll give you another minute or two. But when you come back up, to be really clear, here's the question I've got. Counsel, counsel, the question when you come back up, please, is this. Is this, and you'll have a minute to look. Where can you tell us that there's a question? Specifically, were there harmful to your client that weren't already asked and answered by earlier witnesses on the government side? Okay? All right. Thank you so much. We'll hear from the government. May it please the Court, Tim Tatarka of the District of Montana on behalf of the United States. Did you count the leading questions? I did not count them, no. And just to answer that, under Rule 611C2, leading questions are allowed if the witness is adverse. Without limitation. That's your position? Without limitation. I have not seen any case that distinguishes between Rule 611C1, which are leading questions on cross-examination, and C2. Is your answer to my question yes? Is the government's position that because this witness was deemed adverse by the trial court, and he clearly was, that the government has free reign to lead to this extent? Unlimited. Is that right? There may be other reasons why. It's just a yes or no. As far as a leading question objection, I think it would be the same rule for leading questions with an adverse witness as leading questions with a cross-examination. Does that mean you think the government can lead without limitation counsel? I'm not trying to be difficult. I just want an answer. The best answer that I can give you, I can't think of a time when you could object leading during a cross-examination without there being some additional problem with the question. For the same reason, I don't think. I'm taking that as a yes. But I'm giving you this is like the fourth time to correct me. If I misstate in the government's position, please tell me. No, I agree with you. I do think the same rule applies in both cases, and there has to be some additional problem if the problem is leading. I do want to get to your point about whether or not the court actually did make a ruling, a final ruling that this question, that Mr. Nesbitt was adverse. I don't think the court was ever actually asked to do that. I agree. I don't agree. I appreciate that. I understand that's your position. These are all hypotheticals. If we get to that point and it's truly plain error, then what? And I think you've told me you think you can lead forever. I also don't think – I do think that you could lead forever. Right. And so what happened is these pages after page – I've never seen anything like it. Page after page after page of the U.S. attorney saying blah, blah, blah, blah, blah, correct, and the witness saying, yep, blah, blah, blah, blah, blah, correct, yep. So the U.S. attorney was testifying. No, Your Honor. The U.S. attorney was conducting a cross-examination, an examination just as he would under cross-examination. Okay, I just disagree with you, period. And I think your much stronger argument is that this witness was late in the trial and this witness was largely cumulative of witnesses who had already testified. So if we get down to that point, please, can you tell me – I've asked opposing counsel to identify what is it that this witness added that was harmful, you know, that wasn't already covered by the government's case. Can you turn to that for me? Yes, absolutely. And I think the standard, obviously, is whether or not there was abuse of discretion with respect to ruling that he was an adverse witness. And I think the key place to look is in the cross-examination by defense counsel because the key reason why he was considered an adverse witness by the government was the favorable testimony that he was giving to the defense. And I would recommend the Court's attention to just a couple places here, particularly excerpts of the record 1750 to 1756, where during direct examination, and this is on excerpts of the record 1625, Mr. Nisbet is very careful in terms of what he defines as board approval and requires that the question, he would only agree to it when it was board approval, not included in the board minutes. And on a very friendly cross-examination, he makes the point for voluntary testimony, pages and pages, about how his understanding that this was the way that the company had conducted real estate deals in the past, that he had board approval in principle. And defense counsel thought that was favorable and important enough to highlight it in the defense closing. Supplemental excerpts of the record 2697, the defense counsel quotes the cross-examination there. And the other point that I want to make is I don't — None of that had happened prior to the 494 leading questions on direct. No, no, but the issue in terms of whether or not there's plain error here is whether or not it affected counsels. I agree. Okay. But I interrupted. You were saying a third point. So the third point, which is why I believe that this is waiver rather than forfeiture, is that trial counsel, I believe, made a strategic decision to contrast both on his cross-examination, and this is excerpts of the record 1723, and then more explicitly at closing, at excerpts of the record 2696, the trial counsel for the defense expressly says, well, on cross-examination, all you heard from the witness was correct, correct, correct. On cross-examination, I gave him a chance to explain, clearly making the strategic decision that it was — that he was benefiting from the fact that there was just — benefiting from all of those correct, correct, corrects, and making the point in contrast that he was giving the witness a chance to testify, and that's because the witness, Mr. Nusbitt, was fundamentally — his interest was to justify his behavior. He had — he had pled guilty to — He was a cooperating witness with a very powerful incentive to testify at this point. Wasn't he already clearly a cooperating witness? He was a cooperating witness, but — and again, I would recommend the court's attention to that cross-examination, page after page of him justifying his behavior, explaining that it was — and I would recommend the court's attention to the Esko case, which we cited in our briefs, which was another case where there was co-conspirators who had already pled guilty, and the court makes the point that they had — still had incentive to maintain their reputations, and I think that's the case here. And so I do think that this is an issue not just of forfeiture but waiver, and the other point that I want to make on that — What's the best case for waiver? I mean, I looked at waiver myself, and I thought to myself, I don't know that it can be waiver. I mean, there's a strong argument one can say that when you get notice of what's going to happen here and you don't do anything about it, that might be a waiver. I looked at what case there is that would say this is a waiver just simply because you got up and gave leading questions in your cross, and I couldn't find one of those. So what's your best case? I don't have a case to point you to, but what I do have is the language of Rule 103B and the advisory notes, which clearly — which make clear that if there's a question about whether or not there was a definitive — right, 103B says if the judge has made a definitive ruling, then you don't need to redo an objection. The notes to that make clear that you have to make the — it's up to the trial counsel to make sure that a ruling is definitive. But counsel, hang on right there. You just told me that the judge ruled, and he does clearly rule this is an adverse witness, and your position is then you can lead forever. I disagree that the judge clearly ruled on this, Your Honor. Okay, but if he had, if I disagree with you there, your position is you can lead forever. Is it really the case that the government's going to argue that the defense counsel had to object to every question? No, that is absolutely not the government's position, Your Honor. What is the government's position, please? I want to make clear, not only was there notice before trial, but that ruling that the district court made, the language that the district court made in overruling that objection is very important. Counsel, I just told you I disagree with you. If — please, please answer my question, and then I'll let you circle back to this. But you're missing my question, and I'm sure it's not intentional. But if I disagree with you on that point, and your position is the government, once there's an adverse witness on the stand, can lead forever, is it your position the defense counsel has to object every time? Absolutely not. Rule 103B is clear. Once there is a definitive ruling on the record, you don't need to renew objections. It is the government's position that there was never a definitive ruling. But you're not answering my question. But I've given you three tries, so go right ahead, please, with Judge Smith's question. I agree with Your Honor that if there was a definitive ruling, he didn't need to renew the objection. Thank you. That was my question. Okay. But now I have 30 more seconds. I guess what I'm saying, what you're really saying here is that when he says, well, we're conduct, I assume, as an adverse witness here, and so leading questions are appropriate, that that was not definitive. That's what you're saying, right? Absolutely. I think a district court judge, especially one with the experience of Chief Judge Christensen, does not use the language, them having had noticed that he was going to be treated as an adverse witness, and then there not being an objection to that, the judge then saying, I assume we're treating him as an adverse witness, that is absolutely not a definitive ruling. All right. Let's go a little further, just a little bit. So why is it error? I don't. Why isn't it error? Oh. Sorry. I don't think it's error here, because I don't think the district court abused his discretion in determining that he's a leading witness, because I think the court can look at the entire record here, including the direct examination, looking at this on plain error, you can see that Mr. Nisbet did have fundamental interests in justifying his behavior and in explaining away his behavior. And, again, particularly I would point to 1750 to 1756. All right. Thank you. Thank you. And I take it, you haven't mentioned it here, but you did in your briefing, I take it your position is that if we think there was error here, even plain error, you think it was harmless in that there's overwhelming evidence of guilt. Harmless, and I want to be clear that the standard that this court applies is that the defense has to show that he was deprived the right of a fair trial. So I think it is ‑‑ I use the language harmless, but the point is the burden is on them to show that. Yes. Yes. I appreciate that. Thank you, counsel. Thank you very much. And so I just got a note here from my helper that the day she was wrong in this case was set for 15 minutes. I think we've heard everything the government wanted to say. You went a little over time anyway, and defense counsel, I gave you some homework. So you want to come back up to the podium, please, and Madam Clerk will adjust the clock. Just so that he can plan, that means he has how many minutes left? Four? Four. Okay. Come right on up, please, sir. I have four months. You do. Two points. Well, let me read these. I highlighted several in my opening brief, the questions, Judge, you were asking about that only the co‑conspirator could answer. Here's one on page 35 of my brief. You and Mr. Manlove knowingly combined, conspired, confederated, and agreed to knowingly defraud Vans and others of Vans' assets for personal gain. That couldn't have been gotten from any other witness or any document. Okay. And that's on page 35 of your brief. So we have that one, right? Yeah. And then I've highlighted several others in my brief. Okay. Well, to the extent they're in your brief, we've certainly all read your brief. All right. Okay. As to the burden of proof, I think because if we've implicated a fair trial here, and I think it's discretionary, basically, one question, the ruling's wrong on leading question, but we have hundreds of leading questions. So I think it implicates a fair trial, constitutional right to a fair trial, as well as constitutional rights. Do you challenge the substance of the testimony? Well, the substance of the testimony. The substance of the witness's testimony. Do you challenge it? Yes, I do, because it's the prosecutor's testimony, not the witness's. Just a minute. If it is the witness's testimony, I mean, the prosecutor put the question in a leading form. The witness certainly said yes. If it's the witness's testimony, do you challenge the substance thereof? Not that it's the prosecutor's testimony. I mean, the facts they're in. Well, I do, particularly with conspiracy, and my client got on the stand and denied a lot of these things. Well, but just a minute. Didn't the bookkeepers and the office workers say the same thing, that they were working at the same time? They didn't say the same. Didn't the custodian of your client's credit card records regarding the payment of the MBA tuition say the same stuff? Well, there's no doubt about the MBA tuition, but the question is jumping into – Is there no question that the bankers at the time said they were unwittingly drawn into your client's scheme? Isn't that what they said? They said that and a lot of other facts were proven. Didn't the bankruptcy trustee also confirm everything that was said? Well, the star witness really didn't know anything about the bankruptcy, Your Honor. Did the former accounting department employees that itemized and described the misuses of the funds by your client, did they disagree? No. I mean, I went through and looked at all the other testimony and said, come on. I've got bookkeepers. I've got office workers. I've got the custodian of the credit cards. I've got the bankers at the time. I've got the bankruptcy trustee. I've got the former accounting department employees. All of them saying everything that that guy said, even if he were led. And it's very late in the trial. This witness was very late in the trial. I read the transcript the way Judge Smith does. The jury had heard a lot of this. So why does this matter? He ties it in. You can't just cut that out because he ties it in his closing argument, too. Also, and I didn't raise sufficiency of the evidence. And you certainly could rule or somebody could find compelling or compelling evidence. I'm saying without this. Well, that standard is just almost impossible. Sufficiency of the evidence on a trial like this, you know, we're looking at a very colorful argument that there was overwhelming evidence of guilt. And so despite what at least one of us, I think, considers to be really egregious leading, I struggle to see that this is prejudicial to your client. My last question is very, very, I wanted you to get there because it's my last question. Have you read U.S. v. Hansen? I may have, I don't know. 434, Fed 3rd, 92, 105. It says, reversal is not warranted where the defense engaged in a thorough cross-exam, enabling the jury to appropriately assess the testimony. Are you suggesting that you did not have a thorough cross-exam? I am. You're saying that counsel made a bad, did not do a good job? I say he couldn't do a good job because he couldn't cross-examine the prosecutor's leading questions. He couldn't get those words. He couldn't examine the prosecutor? He couldn't cross-examine the prosecutor. The answers the witness gave were the prosecutor's words. So he couldn't cross-examine the witness's demeanor, the words said by the witness. He just couldn't do that because of what happened. I understand your argument. You're substantially over your time, and we appreciate your argument. Thank you both for coming to argue today. We'll take that case under advisement and move on to the next case on the calendar. Please, and that's the United States v. Murillo, 17-30129.
judges: Fernandez, N.R. Smith, Christen